IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| NICHOLAS TODD SUTTON, | ) | |
| | ) | <u>CAPITAL CASE</u> |
| Plaintiff, | ) | |
| | ) | NO. 3:19-cv-00005 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| TONY PARKER, et al., | ) | |
| | ) | |
| Defendants | ) | |

## <u>MEMORANDUM OPINION</u>

Nicholas Todd Sutton, an inmate on death row in Riverbend Maximum Security Institution, brings this action for injunctive relief challenging the method of his upcoming execution pursuant to 42 U.S.C. § 1983. Defendants Tony Parker, the Commissioner of the Tennessee Department of Correction (TDOC), and Tony Mays, Warden of Riverbend, move under Rule 12 of the Federal Rules of Civil Procedure to dismiss the amended complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. (Doc. No. 12.) For the following reasons, Defendants' motion will be granted, and this action will be dismissed in its entirety.

## I.     <u>LEGAL STANDARDS</u>

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 1950. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

As a general rule, "matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under [Federal Rule of Civil Procedure] 56." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). The term "pleadings" encompasses both the complaint and the answer, Fed. R. Civ. P. 7(a), and any exhibit thereto. Fed. R. Civ. P. 10(c). However, the Court of Appeals has held that

"[d]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (holding that a district court may consider documents referenced in the pleadings that are "integral to the claims" in deciding motion to dismiss); *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (noting that in deciding a motion to dismiss "the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice").

Plaintiff sues under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

## II.    FACTS AND PROCEDURAL BACKGROUND

In 1985, when Plaintiff committed the murder for which he was convicted and sentenced to death, *see State v. Sutton*, 761 S.W.2d 763, 764 (Tenn. 1988), Tennessee law provided, as it had since at least 1932, that inmates sentenced to death would be executed by means of electrocution:

> Whenever any person is sentenced to the punishment of death, the court shall direct that the person be put to death by electrocution, and that the body be subjected to shock by a sufficient current of electricity until dead.

Tenn. Code Ann. § 40-23-114 (1982). In keeping with this law, at the conclusion of Plaintiff's sentencing hearing, the trial judge announced that "[i]n accordance with the finding of the jury that the punishment for the defendant, Nicholas Todd Sutton, shall be death, the Court sentences you, Nicholas Todd Sutton, to be put to death by electrocution." (Doc. No. 11-46 at 2–3.)[1]

The Court recently described in detail the intervening changes to Tennessee law regarding methods of execution. *West v. Parker*, No. 3:19-CV-00006, 2019 WL 2341406, at *2–4 (M.D. Tenn. June 3, 2019) (Crenshaw, C.J.), *aff'd*, No. 19-5585, 2019 WL 3564476 (6th Cir. Aug. 6, 2019). Under current law, the presumptive method of execution is lethal injection, but inmates condemned for crimes they committed before January 1, 1999, can choose to be electrocuted instead by signing a written waiver. Tenn. Code Ann. § 40-23-114(a) and (b). Electrocution is also the default method of execution if lethal injection is declared unconstitutional or the TDOC Commissioner certifies that lethal injection drugs are unavailable. § 40-23-114(e). And finally, state law provides that if the method to be used is declared unconstitutional, an execution shall be carried out "by any constitutional method of execution." § 40-23-114(c).

The background this Court recently recited of the TDOC's lethal injection protocols and litigation over those protocols applies equally to Plaintiff, as he was consistently part of the group of death row inmates involved in the relevant state-court litigation. Specifically, he shared counsel with Stephen Michael West, and all arguments and motions made on West's behalf in state court were made on Plaintiff's behalf as well. Accordingly, the Court adopts the background previously set forth:

> Pursuant to every version of the statute in effect since 1998, the TDOC devised a series of protocols to carry out executions in Tennessee. As relevant to this case, the lethal injection protocols adopted in 2013, 2014, and 2015 all called for

---

[1] The Court's references to specific pages within a document are to the CM/ECF page numbers, rather than to any original pagination, within the document.

execution by a lethal dose of the barbiturate pentobarbital. *West v. Schofield*, 519 S.W.3d 550, 552 (Tenn. 2017), *cert. denied sub nom. West v. Parker*, 138 S. Ct. 476 (2017), and *cert. denied sub nom. Abdur'Rahman v. Parker*, 138 S. Ct. 647 (2018), *reh'g denied*, 138 S. Ct. 1183 (2018). A group of death row inmates including Plaintiff filed suit in state court alleging, among other things, that the pentobarbital protocol constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution by exposing them to a substantial risk of serious harm or lingering death. *Id.*, 519 S.W.3d at 563. The state courts concluded after trial that the inmates' Eighth Amendment claims failed on their merits, id., and the United States Supreme Court denied certiorari on January 8, 2018. *Abdur'Rahman*, 138 S. Ct. 647.

On the same day that the Supreme Court denied certiorari in the challenge to pentobarbital, TDOC revised its lethal injection protocol to provide for two alternative methods of execution: Protocol A, comprised of a lethal dose of pentobarbital; and Protocol B, comprised of a dose of midazolam, followed by vecuronium bromide, and then potassium chloride, in that order. (Doc. No. 11-3 at 34.) Plaintiff and dozens of his fellow death row inmates again filed suit in state court "seeking a declaration that the new, January 8, 2018 Lethal Injection Protocol, Protocol B, violates their constitutional and statutory rights." (Doc. No. 13-1 at 7.) They alleged, among other things, that the three-drug execution method constituted cruel and unusual punishment in violation of the Eighth Amendment. *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 610 (Tenn. 2018). On July 5, 2018, while that lawsuit was still pending in the trial court and two days after the plaintiffs filed their second and final amended complaint, TDOC revised its lethal injection protocol to eliminate the pentobarbital option and leave the three-drug protocol as the sole method of lethal injection. (Doc. No. 11-4 at 34.)

Trial started on the inmates' claims on July 9, 2018. *Abdur'Rahman*, 558 S.W.3d at 612. During his opening statement, counsel for Plaintiff and several other inmates in the state case asserted that the issue before the court was still the January protocol and that he "intend[ed] to go forward with claims against their new protocol, the newly ripe claims" through "either an amended pleading or a new pleading." Response-Attachment A at 3–9, *Miller v. Parker*, No. 3:18-781 (M.D. Tenn. filed Oct. 4, 2018) (Miller Doc. No. 18-1 at 3–9). He acknowledged, however, that relevant provisions of the protocols were the same and that the pending causes of action "address[ed] the same issues, but not the same protocol." *Id.* at 4. He asserted that the pending claims were not moot and that "we can't completely start over." Id. The trial proceeded and lasted ten days. *Abdur'Rahman*, 558 S.W.3d at 612.

At the conclusion of the trial, the state court denied the plaintiffs' motion to amend their complaint to conform to the proof with regard to an alternative lethal injection method that was not alleged in the complaint but about which witnesses had testified. [FN1 omitted] Order Applying Tennessee Civil Procedure Rule 15.02, *Abdur'Rahman, et al. v. Parker*, No. 18-183-II(III) (Davidson Chancery Jul. 19, 2018). [FN2 omitted]  In a written order, the state court explained that:

> Denial of the Plaintiffs' Rule 15.02 motion to amend on the Glossip
> alternative, however, is separate from and does not affect that by

> express consent of the parties ...the pleadings have been amended to conform to the filing on July 5, 2018 and the proof at trial that the protocol in issue and on which declaratory judgment is sought is the Lethal Injection Execution Manual, Execution Procedures For Lethal Injection, Revised July 5, 2018.

*Id.* at 2–3. Plaintiff and three others filed a motion seeking "reconsideration of that portion of the Court's order which adds consideration of Defendant's July 5, 2018 [protocol] to those matters presently pending before the court." Motion of Plaintiffs, *Abdur'Rahman, et al. v. Parker*, No. 18-183-II(III) (Davidson Chancery filed Jul. 20, 2018). **FN3** In their memorandum in support of the motion, the inmates argued that allowing them to bring separate claims against the July protocol would not mean the recently concluded trial was "for naught," because "under principles of res judicata and collateral estoppel/issue preclusion, the results of this Court's judgment as to each issue relevant to its determination of the constitutionality of the January 8th Protocol will bind the parties in a subsequent litigation." Memorandum in Support at 10, *Abdur'Rahman, et al. v. Parker*, No. 18-183-II(III) (Davidson Chancery Jul. 20, 2018). Specifically, they asserted that:

> the following disputed factual issues and/or mixed questions of law and fact will be resolved by this Court's resolution of Plaintiffs' pending challenge of the January 8th Protocol and will become binding on the parties:
>
> (1) Does Tennessee's midazolam, vecuronium bromide, and potassium chloride lethal injection protocol create an intolerable risk of unnecessary pain and suffering on its face and without considering their individual characteristics?
>
> (2) If so, is Tennessee's former default method of execution, the one-drug pentobarbital lethal injection protocol first adopted in 2013, a feasible and readily available alternative method of execution and/or are Plaintiffs required to demonstrate such an alternative under the facts of this case?
>
> (3) Did Defendants' adopting and implementing Tennessee's midazolam, vecuronium bromide, and potassium chloride lethal injection protocol despite actual knowledge it would cause unnecessary and severe pain and suffering shock the conscience, i.e., have Defendants deliberately chosen to inflict severe pain and suffering?
>
> <u>**Upon the conclusion of these proceedings, the parties to this action will never litigate these issues again.**</u> The resolution of these issue [sic] raised by the current pleadings and proof may not resolve every claims [sic] as to the July 5th Protocol. However, they will resolve some of those claims. As importantly, they will resolve critical factual issues that are applicable to both the January 8th and the July 5th Protocol. The vast majority of resources expended to date have been expended on those very issues.

*Id.* at 11−12 (emphasis added). The state court denied the motion to reconsider and expressly held that the "July 5, 2018 revision to the January 8, 2018 Lethal Injection Execution Manual did not constitute a substantial change to which new causes of action accrued." Memorandum and Order Denying Motion at 4, *Abdur'Rahman, et al. v. Parker*, No. 18-183-II(III) (Davidson Chancery Jul. 26, 2018).

> **FN3** The motion was filed on behalf of state-court plaintiffs David Earl Miller, Nicholas Todd Sutton, Stephen Michael West, and Larry McKay. It expressly noted that "[r]econsideration is not sought by any Plaintiff not so joined." *Id.* at 2 n.2.

Hours after denying the motion to reconsider, the state court ruled in favor of the defendants on the plaintiffs' claims. (Doc. No. 13-2). The Tennessee Supreme Court assumed jurisdiction over the inmates' appeal and affirmed on October 8, 2018. *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 613 (Tenn. 2018). The United States Supreme Court has denied three petitions for certiorari arising from the state court's decision. *Abdur'Rahman v. Parker*, No. 18-8332, 2019 WL 2078094 (U.S. May 13, 2019); *Miller v. Parker*, 139 S. Ct. 626 (2018) (denying certiorari and denying stay of execution); *Zagorski v. Parker*, 139 S. Ct. 11 (2018) (same).

*West v. Parker*, No. 3:19-CV-00006, 2019 WL 2341406, at *4–6 (M.D. Tenn. June 3, 2019), *aff'd*, No. 19-5585, 2019 WL 3564476 (6th Cir. Aug. 6, 2019).

Plaintiff and three other inmates—the same group who joined in the motion to reconsider in state court discussed above—filed suit in this Court on November 2, 2018, alleging violations of their constitutional rights in connection with their anticipated executions and seeking a temporary restraining order or preliminary injunction. Complaint for Injunctive Relief, *Miller, et al. v. Parker*, No. 3:18-1234 (M.D. Tenn. Nov. 2, 2018). On November 15, 2018, the Court enjoined Defendants from proceeding with any Plaintiff's execution without providing telephone access to his attorney-witness, but held that Plaintiffs had insufficient likelihood of success on their Ex Post Facto, Eighth Amendment, and coerced-waiver claims to warrant further preliminary relief. Memorandum and Order, *Miller, et al. v. Parker*, No. 3:18-1234 (M.D. Tenn. Nov. 15, 2018) (Campbell, J.), (*Miller* Doc. No. 20). The United States Court of Appeals affirmed that ruling. *Miller v. Parker*, 910 F.3d 259, 260 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 399 (2018). After Mr. Miller's execution on December 6, 2018, the Court severed the claims of the remaining

three inmates, Order, *Miller, et al. v. Parker*, No. 3:18-1234 (M.D. Tenn. Jan. 1, 2019) (Campbell, J.), (*Miller* Doc. No. 47), and Plaintiff's case was assigned to the undersigned for further proceedings. Plaintiff filed an Amended Complaint for Injunctive Relief on February 7, 2019 (Doc. No. 11), which is the subject of Defendants' pending Motion to Dismiss. (Doc. No. 12.)

The Court dismissed West's materially identical lawsuit on June 3, 2019, and the Sixth Circuit affirmed that dismissal on August 6, 2019. *West*, 2019 WL 2341406, *aff'd*, 2019 WL 3564476. The Supreme Court denied certiorari on August 15, 2019, *West v. Parker*, No. 16-5561, 2019 WL 3821757 (Aug. 15, 2019), and West was executed by electrocution that same day.

### III. <u>ANALYSIS</u>

Plaintiff sues Tony Parker, the Commissioner of the TDOC, in his official capacity as the official who seeks to execute Plaintiff pursuant to the current execution protocol and will oversee the execution. He also sues Tony Mays, the Warden of Riverbend Maximum Security Institution, in his official capacity as the official who is "directly in charge" of Plaintiff's execution. (Doc. No. 11 at 5.) He seeks a preliminary and permanent injunction preventing Defendants from executing him by the current lethal injection protocol, executing him by electrocution, executing him in any manner that violates the Ex Post Facto clause and is contrary to the sentence imposed on him, and executing him in any manner without allowing him to have two attorney witnesses with immediate access to a telephone and each other throughout the execution. (*Id.* at 146–47.) Defendants move to dismiss all claims on the grounds of lack of jurisdiction and/or failure to state a claim. (Doc. No. 12.)

### A. <u>RES JUDICATA</u>

As did the parties in *West*, the parties here disagree about whether the doctrine of res judicata applies to this case in light of the state-court litigation. Res judicata, in its narrowest

sense, is "the preclusion of claims that have once been litigated or could have been litigated" in a previous lawsuit. *Hutcherson v. Lauderdale Cty., Tenn.*, 326 F.3d 747, 758 n.3 (6th Cir. 2003). It "rests at bottom upon the ground that the party to be affected, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction." *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 797 n.4 (1996).

Congress has dictated that state court judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C.A. § 1738. Accordingly, federal courts are required to apply res judicata in a manner "to give the same effect to the Tennessee state court judgment as would another Tennessee state court." *Hutcherson*, 326 F.3d at 758. "Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]" *Allen v. McCurry*, 449 U.S. 90, 96 (1980). This policy "not only reduce[s] unnecessary litigation and foster[s] reliance on adjudication, but also promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Id.* at 95–96.

Tennessee courts have "a long-standing tradition in upholding judgments" pursuant to res judicata. *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 400 (Tenn. Ct. App. 2009). In rejecting a party's arguments for adopting several exceptions to res judicata, the Tennessee Court of Appeals quoted the Tennessee Supreme Court regarding the policy in favor of a strong res judicata doctrine:

> The policy rationale in support of Res Judicata is not based upon any presumption that the final judgment was right or just. Rather, it is justifiable on the broad grounds

9

of public policy which requires an eventual end to litigation. Akin to statutes of limitations, the doctrine of Res judicata is a 'rule of rest' and 'private peace'. . ..

. . . It is not material on this point whether the finding of the jury was Right or not in the former suit. That cannot be questioned any more between the same parties or their privies. Right or wrong the question was finally closed, unless a new trial had been obtained in the same suit. This rule is not alone for the benefit of the parties litigant, to put an end to strife and contention between them, and produce certainty as to individual rights, but it is also intended to give dignity and respect to judicial proceedings, and relieve society from the expense and annoyance of indeterminable litigation about the same matter.

Id. at 400–01 (quoting *Moulton v. Ford Motor Co.*, 533 S.W.2d 295, 296 (Tenn. 1976)).

Tennessee courts use the term "res judicata" broadly to include both claim preclusion, as just described, and issue preclusion (also known as collateral estoppel). *Regions Fin. Corp.*, 310 S.W.3d at 393. The Sixth Circuit has summarized the elements of the claim-preclusion type of res judicata defense in Tennessee:

The state of Tennessee bars under res judicata "all claims that were actually litigated or could have been litigated in the first suit between the same parties." *Am. Nat'l Bank & Trust Co. of Chattanooga v. Clark*, 586 S.W.2d 825, 826 (Tenn. 1979). Four elements must be established before res judicata can be asserted as a defense: (1) the underlying judgment must have been rendered by a court of competent jurisdiction; (2) the same parties were involved in both suits;[2] (3) the same cause of action was involved in both suits; and (4) the underlying judgment was on the merits. *Collins v. Greene Cty. Bank*, 916 S.W.2d 941, 945 (Tenn. Ct. App. 1995) (citing *Lee v. Hall*, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990)).

*Id.* The corollary doctrine of issue preclusion dictates that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment . . . the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *In re Bridgestone/Firestone*, 286 S.W.3d 898, 904 (Tenn. Ct. App. 2008) (quoting *Restatement (Second)*

---

[2] Tennessee appears not to strictly limit res judicata's application to cases involving the same parties. *See Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 115 n.11 (Tenn. 2016) (discussing privity). That distinction is not material to this case, however, because Plaintiff was a party to the state-court litigation.

*of Judgments § 27* (1982)).  The elements of the issue-preclusion type of Tennessee's res judicata doctrine are:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

*Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 107 (Tenn. 2016).

Defendants assert that several of Plaintiff's claims are barred by the doctrine of res judicata as a result of the *Abdur'Rahman* litigation in state court and should be dismissed for lack of subject matter jurisdiction. (Doc. No. 13 at 1, 12–19.)  Plaintiff responds that res judicata does not apply to this case at all for four reasons: (1) Plaintiff filed suit in state court about the January 8, 2018 execution protocol and was not really a party to litigation of the July 5, 2018 protocol he challenges now (Doc. No. 17 at 7); (2) the Davidson County Chancery Court lacked authority to stay Plaintiff's execution (*id.* at 11); (3) Plaintiff was denied the opportunity to be heard in state court (*id.* at 15); and (4) Plaintiff now relies on new facts that could not have been presented in state court. (*Id.* at 21.)

The Court thoroughly analyzed and rejected each of Plaintiff's arguments in its recent opinion in *West*, which the Sixth Circuit has affirmed on the merits.  Accordingly, the Court adheres to its previous analysis:

1. Whether Plaintiff Has Litigated the Constitutionality of the July 5 Protocol

The state-court plaintiffs' central claim in *Abdur'Rahman* was that the TDOC's midazolam-based three-drug lethal injection protocol, originally known as "Protocol B," violated their constitutional and statutory rights in a host of different ways, because the three-drug protocol would cause severe and unnecessary pain and suffering. (Doc. No. 13-1 at 7, 24, 29–51). They alleged pages of facts about midazolam, vecuronium bromide, and potassium chloride to support their chief

position that midazolam was "scientifically incapable" of preventing the "constitutionally intolerable pain" that would be caused by the three-drug protocol. (*Id.* at 29–51, 81). Defendants argue that the July 5 revision to the lethal injection protocol was not a substantial change with regard to the three-drug protocol at issue in both these cases and that Plaintiff's attempt to distinguish the protocols by date is "a red herring." (Doc. No. 13 at 16.)

The Sixth Circuit has repeatedly considered whether a new lethal injection protocol gives rise to a new cause of action in the context of determining how to apply a statute of limitations. In *Cooey v. Strickland*, 479 F.3d 412 (6th Cir. 2007) ("*Cooey II*"), the inmate argued that his cause of action did not accrue until Ohio revised its lethal injection protocol with respect to the timing and duration of executions, medical examinations prior to executions, and the procedures for establishing and maintaining intravenous lines. *Id.* at 424. But the Sixth Circuit concluded that those changes did not give rise to a new cause of action regarding the plaintiff's challenge to his method of execution:

> As Defendants assert, none of these changes relates to Cooey's core complaints. Further, none of these areas were implicated as a basis for Cooey's expert's conclusion that the process presents a risk that Cooey will experience pain. Rather, Dr. Heath, Cooey's expert, criticized the use of pancuronium bromide, the use and dosage of sodium thiopental, the failure to provide a continuous dose of an ultra-short-acting barbiturate, and the lack of information regarding prison personnel's training to prepare and administer the drugs. Cooey cannot prevail on this basis either.

*Id.*

Similarly, in 2009, Kentucky promulgated its preexisting lethal injection protocol as a formal regulation, "making no material changes to the method of execution." *Wilson v. Rees*, 620 F.3d 699, 701 (6th Cir. 2010). The Sixth Circuit determined that a new cause of action did not accrue upon the promulgation of the new regulation, because that action was inconsequential to the plaintiff's claims:

> Wilson's "core complaints" challenge the drugs used and the methods of administering those drugs, issues extraneous to whether the protocol is issued as an internal guidance document or as an administrative regulation. As it relates to Wilson's claims, the new regulation is indistinguishable from the previous lethal injection protocol. Further, Wilson makes no reference to any particular protocol document in his complaint, but rather describes the method of execution that he seeks to challenge. Quite reasonably, Wilson's complaint is not concerned with the form of the protocol, but rather the manner in which the protocol dictates that he will be executed. To the extent that his manner of execution allegations were true at the time he filed his complaint, they are equally as true today.

*Id.* (internal citations omitted).

Similarly, Tennessee courts deciding whether to apply res judicata to a second suit apply a "transactional test," under which "[t]wo suits...shall be deemed the same 'cause of action' for purposes of res judicata where they arise out of the same transaction or a series of connected transactions." *Creech v. Addington*, 281 S.W.3d 363, 381 (Tenn. 2009). Plaintiff's state-court complaint referenced the January 8, 2018 Lethal Injection Protocol for identification purposes, but its "core complaint" was clearly the alleged unconstitutionality of Protocol B—the midazolam-based three-drug protocol, and the "transaction" underlying his lawsuit was his impending execution with that protocol. Nothing material to that challenge changed with the July 5 revision to the protocol. The midazolam-based three-drug protocol did not suddenly become riskier or more painful as a result of the deletion of the pentobarbital protocol, and no significantly better alternatives suddenly became available or unavailable. Accordingly, the July 5 revision did not give rise to a newly accrued cause of action with regard to the constitutionality of the three-drug protocol. Plaintiffs' allegations about the three-drug protocol were as true or false when state case concluded as they were when it began. The cause of action in both suits—the alleged unconstitutionality of the three-drug protocol—is the same, as required for res judicata to apply. Even if the Court were persuaded by Plaintiff's argument that the change in the protocol gave rise to a new cause of action that was not litigated in state court (which it is not), the underlying issue of the three-drug protocol's constitutionality was absolutely decided in the state-court case.

Moreover, the issue of whether Plaintiff obtained a new cause of action when the protocol was revised on July 5 was also "actually raised, litigated, and decided" in state court. As the Court observed above, Plaintiff's counsel acknowledged that the relevant provisions of the protocols were the same and that the pending claims already addressed the same legal issues raised by the revised protocol. He then proceeded with trial, despite his expressed intention to file another action. After trial he moved the trial court to reconsider its holding about the constructive amendment of the pleadings, and the state trial court explicitly held that the pleadings were amended to conform to the July 5 revision and that the July 5 revision did not constitute a substantial change giving rise to new causes of action.

Plaintiff then complained in both his principal brief and his reply brief to the Tennessee Supreme Court that he had not consented to the de facto amendment to the complaint to incorporate the July 5 protocol and that only the January 8 protocol was at issue. Brief of Plaintiffs-Appellants at 1, 8, *Abdur'Rahman v. Parker*, No. M2018-01385-SC-RDO-CV (Tenn. filed Sept. 6, 2018); Reply Brief of Plaintiffs-Appellants at 8 and n.10, id. (filed Sept. 28, 2018). The Tennessee Supreme Court unambiguously rejected that argument as a preliminary matter in its ruling:

> In denying the motion to reconsider, the trial court found that eliminating the alternative one-drug protocol was not a substantial change to the lethal injection protocol for the purposes of this facial challenge. We agree. From the time of the filing of the original complaint on February 20, 2018, the method-of-execution claim: (1) challenged the three-drug protocol and (2) alleged a one-drug protocol using pentobarbital as an alternative method of execution.

> Availability in theory of pentobarbital, based solely on its status as
> an option in the lethal injection protocol prior to the revision on July
> 5, 2018, would not have satisfied the Plaintiffs' burden of proof.

*Abdur'Rahman*, 558 S.W.3d at 617. Plaintiff clearly disagrees with the state court's ruling; but his documenting that disagreement throughout the state proceedings and in his Response to the pending motion does not change that the ruling was made by a court of competent jurisdiction and was affirmed by the Tennessee Supreme Court on appeal. If Plaintiff believed the ruling to be error, his recourse was to seek review of that issue by the United States Supreme Court. 28 U.S.C. § 1257 (providing for jurisdiction of the Supreme Court to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had"). Plaintiff is not at liberty to relitigate the state court's ruling in this Court. Plaintiff cannot avoid the bar of res judicata by creating a false distinction between the three-drug method of execution he challenged in state court and the same three-drug method he challenges now.

2. Authority to Stay Executions

Plaintiff relies on *Lien v. Couch*, 993 S.W.2d 53 (Tenn. Ct. App. 1998), for the proposition that res judicata does not apply to this case because the Davidson County Chancery Court could not have granted all of the relief he now seeks— specifically, an injunction against his execution. [FN5 omitted] (Doc. No. 17 at 11– 14.) In that case, the Liens were sued in Arkansas for breach of contract and subsequently filed suit in Tennessee against the Arkansas parties for violation of the Tennessee Consumer Protection Act (TCPA). *Lien*, 993 S.W. 2d at 54. When the Arkansas court entered judgment against the Liens, the Arkansas parties asserted that the TCPA claim in Tennessee was barred by res judicata because the Liens could have filed it as a counterclaim in the Arkansas litigation. *Id.* The Tennessee Court of Appeals rejected that argument because the Arkansas courts would not have awarded the full damages available to the Liens in Tennessee under the TCPA, including treble damages and attorney fees. *Id.* at 57–59.

Defendants respond that Lien does not apply to this case because the injunction in question "was available in the state-court system" and that it does not matter "[t]hat the inmates had to seek that relief from the Tennessee Supreme Court, rather than from the chancery court." (Doc. No. 20 at 3–4.) Specifically, Defendants assert that a favorable ruling by the Chancery Court would have provided the basis for an inmate to seek a stay of execution from the Tennessee Supreme Court. (*Id.* at 3.) Moreover, as a practical matter, the appeal process arising from the Chancery Court's ruling inevitably involved the Tennessee Supreme Court, which has unquestioned authority to vacate its own orders setting execution dates. And even if the state supreme court had refused to hear an appeal of a ruling favorable to the inmates, the method of the state plaintiffs' executions would have automatically defaulted to a different constitutional method by virtue of state law. Tenn. Code Ann. § 40-23-114 (d). Accordingly, there is no doubt that Plaintiff's ultimate goal in the state-court litigation was to avoid execution by the three-drug protocol or that a victory in the state case would have led to that result. By contrast, the Liens could

not have obtained full relief at any stage of the Arkansas litigation. Plaintiff cannot avoid preclusion on this basis.

3. Denied the Opportunity to Be Heard

Plaintiff argues that he did not receive due process in the state litigation and that it therefore cannot be given preclusive effect. (Doc. No. 17 at 14–20.) Specifically, he asserts that he was denied an opportunity to be heard on his claim in state court because: (1) four days before trial, Defendants eliminated the method of execution that he had pleaded as an alternative[3]; and (2) the state courts refused to consider evidence of another alternative that was admitted at trial. (*Id.* at 16–17.)

Plaintiff's first argument implicates the standard for constitutional method-of-execution challenges set forth in *Glossip v. Gross*, 135 S. Ct. 2726 (2015). Under *Glossip*, inmates challenging the constitutionality of a method of execution must do two things: (1) "establish that the method presents a risk that is 'sure or very likely to cause serious illness and needless suffering,'" and (2) "identify an alternative that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'" *Id.* at 2737. Plaintiff's original state-court complaint, in a section under the heading "Available Alternative," alleged only that the pentobarbital method of lethal injection, then listed as "Protocol A" in the TDOC's Lethal Injection Protocol, was "a known and available alternative method of execution that has been upheld by the Tennessee Supreme Court, and the United States Supreme Court declined to review its decision." Complaint for Declaratory Judgment at 46, *Abdur'Rahman v. Parker*, No. 18-183-II(III) (Davidson Chancery filed February 20, 2018). In his Second Amended Complaint in state court, Plaintiff alleged for the first time that Protocol A was "a known and available alternative method of execution that entails a lesser risk of pain" and that it was "feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain." (Doc. No. 13-1 at 51 (punctuation and citations omitted).)

Plaintiff's position is that as long as the pentobarbital method remained listed as Protocol A, its "feasibility and availability...was established by the face of the protocol," so Defendants' elimination of Protocol A days before trial resulted in a denial of due process. (Doc. No. 17 at 18.) But that position is simply illogical. The Tennessee Supreme Court case on which Plaintiff relies, which states simply that a protocol "must be assessed on its face," does not remotely suggest that the mere existence of a protocol on paper proves that the method described is readily available for use. (*Id.* (quoting *West v. Schofield*, 460 S.W.3d 113, 126 (Tenn. 2015)).) To the contrary, Tennessee law expressly allows for the possibility that the TDOC commissioner might certify that lethal injection ingredients are unavailable, despite the existence of a lethal injection protocol. Tenn. Code Ann. § 40-23-114 (e)(2) (providing that executions would then be carried out by electrocution). And, as Plaintiff is obviously aware, the omission from a state's protocol of a particular method of execution does not prevent an inmate from alleging and proving that the

---

[3] The eliminated method was the same pentobarbital-based protocol that Plaintiff and his fellow inmates had previously challenged as cruel and unusual punishment in *West v. Schofield*, 519 S.W.3d 550 (Tenn. 2017).

method could be readily implemented. (See Doc. No. 11 at 28–58 (alleging four alternative methods not found in TDOC's current protocol).) The language of a protocol simply does not amount to proof of a lethal-injection method's availability one way or another.

Moreover, Plaintiff raised the issue of whether he was denied notice and "an opportunity to be heard on issues newly-arising from the July 5th Protocol" on appeal to the Tennessee Supreme Court. Reply Brief of Plaintiffs-Appellants at 6, *Abdur'Rahman v. Parker*, No. M2018-01385-SC-RCO-CV (Tenn. filed Sept. 28, 2018). The state court rejected his argument:

> [T]he Plaintiffs assert that they were denied notice and an opportunity to be heard on availability of an alternative method of execution because TDOC revised the lethal injection protocol on the eve of trial....
>
> ...Availability in theory of pentobarbital, based solely on its status as an option in the lethal injection protocol prior to the revision on July 5, 2018, would not have satisfied the Plaintiffs' burden of proof. Furthermore, the State's February 15, 2018 motion, asking this Court to set execution dates in eight capital cases before June 1, 2018, because of ongoing difficulty in obtaining the necessary lethal injection drugs, put the Plaintiffs on notice that the three-drug protocol likely would be used. Additional notice came to the Plaintiffs on May 21, 2018, when the Defendants filed, as an attachment to a Motion for Protective Order, an affidavit of the TDOC commissioner, which stated, "As Commissioner, I approved the January 8, 2018 [lethal injection protocol] because the drug pentobarbital and chemicals to compound pentobarbital, the drug in TDOC's previous procedures, are unavailable to TDOC for the purpose of carrying out executions by lethal injection."

*Abdur'Rahman v. Parker*, 558 S.W.3d 606, 617–18 (Tenn. 2018).

Again, Plaintiff clearly disagrees with that ruling. But he cannot earn the opportunity to relitigate claims ruled on in state court by relitigating underlying issues that were also ruled on in state court. Moreover, for all of the reasons explained above, this Court agrees with the Tennessee Supreme Court that elimination of the pentobarbital protocol shortly before trial did not deprive Plaintiff of notice or an opportunity to be heard on his claims.

Similarly, Plaintiff cannot relitigate here the propriety of the state courts' refusal to consider [an alternative two-drug method of lethal injection—using midazolam and potassium chloride without the vecuronium bromide—that was] not alleged in the state-court complaints. The Tennessee Supreme Court considered that issue at length, *Abdur'Rahman*, 558 S.W.3d at 620–23, and concluded that

> [w]ith the filing of an original complaint, an amended complaint, and then a second amended complaint, the Plaintiffs had repeated opportunities to plead removal of vecuronium bromide from the

three-drug protocol as an alternative method of execution. The
Plaintiffs have no justifiable excuse for their failure to plead a two-
drug protocol as an alternative, given their acknowledged
recognition of it during discovery and their second opportunity to
amend the complaint just six days before the trial started.

*Id.* at 622–23. As discussed above, the July 5 revision of the protocol had no bearing
on the state-court plaintiffs' need or ability to allege any alternative method they
wished to plead. The state courts' refusal to consider alternatives not pleaded by
that point did not deprive Plaintiff of the opportunity for a full and fair hearing.

4. Reliance on New Facts

Finally, Plaintiff argues that his current Count 3 (the three-drug protocol violates
the Eighth and Fourteenth Amendments) and Count 6 (unconstitutional coercion)
are not barred by res judicata because they rely on new evidence about the
application of the three-drug protocol that was not available during the state-court
litigation. (Doc. No. 17 at 20–25.) He points to three specific allegations from his
Amended Complaint about the intervening August 9, 2018 execution of Billy Ray
Irick according to the three-drug protocol: (1) Defendants failed to prepare a
contingency dose of midazolam for Irick's execution; (2) "[a]fter (but not in
response to) the Warden's 'consciousness check,' Billy Ray Irick's body jolted, he
gasped for air, he hacked and coughed, his face turned deep purple and he moved
his head"; and (3) Defendant Mays gave the order to proceed with the vecuronium
bromide injection despite knowing Irick was still sensate, causing Irick to
experience terror and excruciating pain. (*Id.* at 23–24.)

Plaintiff is correct that "[t]he doctrine of res judicata 'extends only to the facts in
issue as they existed at the time the judgment was rendered, and does not prevent a
re-examination of the same question between the same parties where in the interval
the facts have changed or new facts have occurred which may alter the legal rights
or relations of the litigants.'" *Creech v. Addington*, 281 S.W.3d 363, 381 (Tenn.
2009) (quoting *Banks v. Banks*, 77 S.W.2d 74, 76 (Tenn. Ct. App. 1934)). But, as
Defendants point out, Plaintiff has already affirmatively acknowledged that "[t]he
evidence regarding the pain and suffering created by Tennessee's July 5th Protocol
presented by West will not be materially different than the evidence presented
in...*Abdur'Rahman*." (Doc. No. 11 at 18; Doc. No. 20 at 5.) Indeed, the state-court
plaintiffs' Second Amended Complaint alleged "numerous problematic and
botched executions" as the result of midazolam-based protocols and detailed the
physical responses allegedly indicative of pain by at least seven inmates previously
executed with midazolam. (Doc. No. 13-1 at 46–50, 57.) They relied at trial on the
testimony of witnesses the Chancery Court characterized as "four well-qualified
and imminent experts" who convinced the court that "midazolam does not elicit
strong analgesic effects and the inmate being executed may be able to feel pain
from the administration of the second and third drugs." (Doc. No. 13-2 at 23.) They
also presented the testimony of twelve eye-witnesses to a number of lethal
injections to the effect that the inmates exhibited "grimaces, clenched fists,
furrowed brows, and moans indicative that the inmates were feeling pain after the
midazolam had been injected and when the vecuronium bromide was injected."

*Abdur'Rahman v. Parker*, 558 S.W.3d 606, 612 (Tenn. 2018); (Doc. No. 13-2 at 29–30). Similar evidence about Billy Ray Irick's execution does not amount to a new material change in the evidence relevant to Plaintiff's claims.

Nor is the new allegation that TDOC did not prepare a back-up dose of midazolam for Irick's execution material to Plaintiff's claims. In his complaints in both state court and this Court, a central allegation of his claims about midazolam is that midazolam has a "ceiling effect," that "[b]ecause of that ceiling effect, 500 mg of midazolam is no more effective than the minimum dose of midazolam required to bind available GABA receptors," and that no amount of midazolam would be sufficient to avoid unnecessary pain during execution. (Doc. No. 11 at 113; Doc. No. 13-1 at 34–36.) The Tennessee Supreme Court denied a motion to consider facts about Irick's execution as moot in light of its ruling. *Abdur'Rahman*, 558 S.W.3d at 625 and n.24. Accordingly, whether Defendants have additional doses of midazolam on hand during an execution has no bearing on Plaintiff's claims about midazolam's effects.

*West v. Parker*, No. 3:19-CV-00006, 2019 WL 2341406, at *8–13 (M.D. Tenn. June 3, 2019).

The Sixth Circuit affirmed this Court's conclusion that res judicata applied to West's case based on the same history of litigation present in this case, *West v. Parker*, No. 19-5585, 2019 WL 3564476, at *4–7 (6th Cir. Aug. 6, 2019), and the Supreme Court denied certiorari. *West v. Parker*, No. 16-5561, 2019 WL 3821757 (Aug. 15, 2019)  In the response Plaintiff filed to Defendants' notices of supplemental authority regarding that subsequent history (Doc. Nos. 22, 23, 26), Plaintiff argues that the Sixth Circuit decision in *West* has no bearing on this case because *West*'s holding that full relief was available to the state-court plaintiffs does not apply here. (Doc. No. 26.)  He asserts that *West* is "limited to the facts found in that case." (*Id.* at 1.)  But *West* was decided on a Rule 12 motion, and the only "facts" found to govern the case were the details of the litigation in state court to which Plaintiff was a party to the same extent as was Mr. West.  Plaintiff continues to quibble about whether the relief available in state court was the same as the relief he now seeks,[4] but the Sixth Circuit expressly held—as a matter of law in precisely the same context as this case—that it was:

---

[4] It is unnecessary to the resolution of this issue, but the Court observes that Plaintiff is inconsistent to the point of apparent gamesmanship regarding what relief he has sought and where.  To borrow

Had West and the other plaintiffs prevailed in *Abdur'Rahman*, they would have obtained a declaratory judgment concluding that pentobarbital was an available alternative, and the three-drug lethal-injection protocol posed a demonstrated risk of severe pain and thus constituted cruel and unusual punishment in violation of the Eighth Amendment. *See Abdur'Rahman*, 558 S.W.3d at 625. The chancery court had jurisdiction to enter such a judgment. Armed with that judgment, West would have been able to obtain a stay of execution from the Tennessee Supreme Court. If the defendants appealed the declaratory judgment to the Tennessee Supreme Court, then West could have sought a stay there if necessary for the litigation to continue, because, as the prevailing party in chancery court, he would have been able to satisfy Tennessee's standard to stay an execution. *See State v. Irick*, 556 S.W.3d 686, 689 (Tenn. 2018) (Tennessee Supreme Court will stay an execution pending resolution of collateral litigation if the prisoner can prove a likelihood of success on the merits). Alternatively, if the defendants had not appealed, they would have been bound by the declaratory judgment that West and the other plaintiffs had obtained, thus West could have avoided the three-drug protocol as a means of execution.

*West*, 2019 WL 3564476, at *5 (footnotes omitted). Plaintiff's continuing assertions that the Tennessee Supreme Court lacks the authority to vacate its own orders setting executions is too meritless to warrant further discussion. Accordingly, the Court again applies res judicata to the

---

a phrase from Plaintiff's briefing, "it is beyond cavil" that he would not have devoted years to multiple rounds of state-court litigation, appeals, and petitions for certiorari challenging one method of execution after another except to permanently avoid execution by any method Tennessee has employed. The suggestion that dozens of plaintiffs represented by a team of able counsel would waste years of time and resources in state court seeking a declaratory judgment that—according to Plaintiff—would have no practical or intended impact on whether and/or how they were executed can hardly be sincere. Plaintiff most recently asserts that "[t]here is nothing in the record before this Court that would support a finding that Sutton sought anything in his federal complaint other than an injunction preventing the Defendants from using Tennessee's three-drug midazolam-based lethal injection protocol to carry out his execution." (Doc. No. 26 at 8.) That statement substantially misrepresents Plaintiff's prayer for relief in his amended complaint and his underlying claims in this case. In addition to an injunction against the three-drug protocol, Plaintiff also expressly seeks an injunction against electrocution AND an injunction against ANY method of execution other than the one in place at the time of his crime and conviction—which, of course, was electrocution. (Doc. No. 11 at 143.) Ergo, he seeks to enjoin Defendants from executing him at all. Moreover, Count 5 of his amended complaint expressly asserts that execution by ANY method violates the Eighth Amendment. (Doc. No. 11 at 135.) Plaintiff's recent protestation that "[he] did not seek a stay of execution. He does not seek one now[,]" (Doc. No. 26 at 8), is inconsistent with the record in this case.

extent appropriate with regard to Plaintiff's claims below, with due consideration for the extent to which Plaintiff's claims are identical to or distinct from the claims in *West*.

B.    <u>COUNT 1 — EX POST FACTO VIOLATION</u>

Article 1, Section 10 of the United States Constitution prohibits Ex Post Facto punishments. Plaintiff alleges that lethal injection pursuant to the current TDOC protocol violates the Ex Post Facto Clause because it "constitutes harsher punishment than execution by electrocution, the punishment to be inflicted on Plaintiff West at the time of his crimes." (Doc. No. 11 at 21–28.) Specifically, he alleges that electrocution "involves a significantly shorter duration of pain and suffering than lethal injection" under the current protocol and that "Defendants should be preliminarily and then permanently enjoined from carrying out Plaintiff's execution under a midazolam-based, three-drug protocol." (*Id.* at 27, 28.)

Defendants assert that this claim is barred by the doctrine of res judicata. (Doc. No. 13 at 12–15.)  They say that "Plaintiff asserted a virtually identical Ex Post Facto claim" in the most recent state court action, where it was dismissed on its merits. (*Id.* at 15.)  In the state-court plaintiffs' first Amended Complaint filed on April 13, 2018, they alleged in Count XIV that the midazolam-based lethal injection protocol is "inhumane" and that its "retrospective adoption . . . violates the ex post facto clause of the United States and Tennessee constitutions." Amended Complaint at 81, *Abdur'Rahman v. Parker*, No. 18-183-II(III) (Davidson Chancery filed April 13, 2018).  And they alleged in Count XV that application of the 1998, 2000, and 2014 legislative amendments to the relevant statute violates the rights of several plaintiffs, including Mr. West, under the Ex Post Facto Clause of the United States Constitution by placing an unconstitutional burden on them to participate in their own executions and violating their religious freedom against such participation. *Id.* at 82–86.

The state trial court dismissed both claims prior to trial:

> Adopting the analysis and authorities of the Defendants, the Court concludes that as in *Malloy v. South Carolina*, 237 U.S. 180, 183 (1915), the addition of Protocol B does "not change the penalty—death—for murder, but only the mode of producing this." *Malloy*, 237 U.S. at 185. *See also*, *In re Lombardi*, 741 F.3d 888, 896–97 (8th Cir. 2014) (State's change of lethal injection protocol to use of compounded pentobarbital does not violate Ex Post Facto Clause), *Williams v Hobbs*, 658 F.3d 842, 848 (8th Cir. 2011) (Risk from possible changes in lethal injection protocol does not violate Ex Post Facto Clause.) Adding an additional lethal injection protocol to the Lethal Injection Execution Manual does not change the quantum of punishment attached to the crime and is not a violation of the Ex Post Facto Clause of the United States or Tennessee Constitutions. Plaintiffs fail to state a claim as it relates to these provisions.
> . . .
>
> A change in the method of execution does not constitute an ex post facto violation because like in *Malloy*, the method of lethal injection does "not change the penalty—death—for murder, but only the mode of producing this." *Malloy*, 237 U.S. at 185. The Plaintiffs have no vested interest in being executed by electrocution as opposed to lethal injection, and the change does not criminally punish conduct that was lawful when committed or increase the punishment of the convicted. The amendments to the law adding lethal injection as the primary method of execution in Tennessee do not violate the Ex Post Facto Clauses of the U.S. or Tennessee Constitutions.

(Doc. No. 13-3 at 32-33, 35.) Plaintiff did not appeal that ruling.

Having elsewhere denounced entirely the application of res judicata to this case, Plaintiff does not address Defendants' res judicata argument specifically in the context of this claim. Nonetheless, the current claim includes a slight twist on the state-court ex post facto claims. Here, Plaintiff is not asserting an ex post facto change from one version of the relevant statute to another, or from one version of the lethal injection protocol to another. Instead, he asserts an ex post facto violation arising from the change between the old electrocution-only statute and the current three-drug lethal injection protocol. The change in lethal injection protocols did not alter the fact that Plaintiff still has the option to choose his preferred method of execution—electrocution—under

Tennessee law. Tenn. Code Ann. § 40-23-114(b).  Nevertheless, he continues to devise theories to litigate the issue.

While Plaintiff did not present the state court with his latest precise theory, Tennessee's law of "[c]laim preclusion 'bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or *could have been litigated* in the former suit.'" *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 395 (Tenn. Ct. App. 2009) (emphasis in *Regions*) (quoting *Patton v. Estate of Upchurch*, 242 S.W.3d 781, 790 (Tenn. Ct. App. 2007)).  As the Tennessee Supreme Court has explained, "[w]hen a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Creech v. Addington*, 281 S.W.3d 363, 379 (Tenn. 2009) (quoting Restatement (Second) of Judgments § 24(1)).

In *Regions*, Regions Financial Corporation ("Regions") unsuccessfully sued several insurers seeking indemnification under an insurance contract, then sued a second time for breach of the same insurance contract. 310 S.W.3d at 386.  Regions raised new theories in its second case, but the Tennessee Court of Appeals explained that "[u]nlike issue preclusion, claim preclusion bars relitigation of the same cause of action not only as to matters actually determined, but 'also to other matters which in the exercise of due diligence could have been presented in the prior action.'" *Id.* at 395 (quoting *Gerber v. Holcomb*, 219 S.W.3d 914, 918 (Tenn. Ct. App. 2006)). Accordingly, the court rejected Regions' argument that it could avoid the res judicata bar by suing under different provisions of the contract than it did in its previous suit:

> Regions' argument, however, fails because Regions is essentially arguing that it should be permitted to split its claim.

> Claim preclusion prohibits parties from splitting their cause of action; it requires parties "to raise in a single lawsuit all the grounds for recovery arising from a single transaction or series of transactions that can be brought together." . . . Where a plaintiff brings two separate breach of contract actions based upon the same wrong but argues liability pursuant to a different contract in the second case the second action is barred by the doctrine of claim preclusion.

*Id.* at 396–97 (citations omitted).

Tennessee's res judicata doctrine similarly prevents Plaintiff from splitting his ex post facto theories between two lawsuits here. Plaintiff brought two separate lawsuits asserting ex post facto violations under slightly different theories that were all available at the time of the first litigation. The current claim is thus barred by the claim-preclusion type of res judicata.

Because Plaintiff is barred from litigating this claim, it is not necessary for the Court to resolve the parties' disputes about whether the Ex Post Facto Clause applies to changes in methods of execution or whether Plaintiff's statutory right to choose the method in place at the time of his crime obviates any ex post facto claim he would otherwise have.

## C.  COUNT 2 — ELECTROCUTION VIOLATES 8TH AMENDMENT

Plaintiff alleges that Tennessee's method of electrocution constitutes cruel and unusual punishment prohibited by the Eighth Amendment.[5] (Doc. No. 11 at 28–75.) Defendants argue that

---

[5] In each of Plaintiff's cruel-and-unusual-punishment claims, he alleges violation of both the Eighth and Fourteenth Amendments. But if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997). Accordingly, inmates' claims of cruel and unusual punishment sound solely under the Eighth Amendment. *Walker v. Norris*, 917 F.2d 1449, 1455 (6th Cir. 1990) ("The Supreme Court has indicated that 'the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . ..' [*Whitley v.*] *Albers*, 475 U.S. [312,] 327 [(1986)]. Under the circumstances, the plaintiff's section 1983 claim in a case such as this must be for redress of eighth amendment, not fourteenth amendment substantive due process, rights. *Cf. Graham* [*v. Connor*], 490 U.S. 386, —— [(1989)]."). The Court therefore disregards Plaintiff's references to the Fourteenth Amendment in

this claim is not ripe for adjudication because none of the following events has occurred that would trigger Plaintiff's execution via electrocution under state law: "(1) [Plaintiff] elects to be executed by electrocution by signing a written waiver, [Tenn. Code Ann.] § 40-23-114(b); (2) lethal injection is held unconstitutional by the Tennessee Supreme Court or the U.S. Supreme Court, *id.* § 40-23-114(e); or (3) the TDOC Commissioner certifies to the Governor that he is unable to carry out the sentence because 'one or more of the ingredients essential to carrying out a sentence of death by lethal injection is unavailable,' *id.*" (Doc. No. 13 at 9–10.)

Plaintiff responds that the contingent nature of his claim is not determinative because "ripeness contemplates whether the contingency likely will arise." (Doc. No. 17 at 37.) He argues that the likelihood of such contingencies' occurring in this case is a factual question that requires further development. (*Id.* at 37–38.) He further asserts that the facts alleged in connection with Counts 1, 3, and 4 of his amended complaint establish the likelihood that Tennessee's current lethal injection protocol is unconstitutional and that, therefore, Tennessee will attempt to carry out his execution by electrocution. (*Id.* at 40.)

A claim must present a real and present dispute for this Court to have jurisdiction to hear it:

> The jurisdiction of federal courts is limited by Article III of the United States Constitution to consideration of actual cases and controversies, therefore federal courts are not permitted to render advisory opinions. Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.

---

connection with his cruel-and-unusual-punishment claims, except to the extent that the Fourteenth Amendment is the vehicle through which the Eighth Amendment applies to the states. *See Harmelin v. Michigan*, 501 U.S. 957, 962 (1991) ("The Eighth Amendment, which applies against the States by virtue of the Fourteenth Amendment, provides 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'").

*Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992) (punctuation and citations omitted). "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Kiser v. Reitz*, 765 F.3d 601, 606 (6th Cir. 2014) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). A plaintiff basing a claim on an anticipated future injury must demonstrate that "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* at 607–08 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

This Court rejected a challenge to the constitutionality of electrocution in Tennessee as unripe under similar circumstances several years ago:

> Petitioner does not have a current claim with regard to electrocution, because current Tennessee law provides for execution of the death sentence by lethal injection. Tenn. Code Ann. § 40–23–114(a) (2000). Because he committed his offense prior to January 1, 1999, Petitioner may elect by written waiver to be executed by electrocution instead of lethal injection. Tenn. Code Ann. § 40–23–114(b). Should he choose to make such a waiver, Petitioner would waive any claim that electrocution is unconstitutional. *See Stewart v. LaGrand*, 526 U.S. 115, 119 (1999). A recent amendment to the controlling statute provides that execution by electrocution is otherwise authorized only in the event that lethal injection is held to be unconstitutional by a court of competent jurisdiction or the Commissioner of the Tennessee Department of Correction certifies to the governor that an essential lethal injection ingredient is unavailable. Tenn. Code Ann. § 40–23–114(d). In the absence of any allegation that either of those triggering events has happened, any challenge to the constitutionality of electrocution is not ripe for review.
>
> Moreover, the Supreme Court found execution of the death penalty by electrocution to be constitutional in 1890, *see In re Kemmler*, 136 U.S. 436, 449 (1890), and no federal court since that time has held it to be unconstitutional. *But see State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (Neb. 2008) (finding electrocution unconstitutional under Nebraska constitution). The Sixth Circuit has reiterated its rejection of such a claim as recently as 2004, *see Williams v. Bagley*, 380 F.3d 932, 965 (6th Cir. 2004), and at least one district court in Tennessee has rejected such a challenge within the last three years, *see Morris v. Bell*, No. 07–1084–JDB, 2011 WL 7758570, at *68 (W.D. Tenn. Sept. 29, 2011).

*Duncan v. Carpenter*, No. 3:88-00992, 2014 WL 3905440, at *42–43 (M.D. Tenn. Aug. 11, 2014)

(Nixon, S.J.); *see also Stanford v. Parker*, 266 F.3d 442, 462 (6th Cir. 2001) (rejecting Eighth Amendment challenge to electrocution by inmate who had not elected it because the plaintiff's "argument ignores the fact that he need not be electrocuted" and because by choosing electrocution he would "waive any objection" to it). The following year, the Tennessee Supreme Court ruled, in yet another case in which Plaintiff was a party, that the inmate-plaintiffs' constitutional challenges to electrocution "depend entirely on future and contingent events that have not occurred and may never occur, and as a result, are unripe and nonjusticiable." *West v. Schofield*, 468 S.W.3d 482, 494 (Tenn. 2015).

For those same reasons, Plaintiff's claim is not ripe for review. Plaintiff's reliance on his claims in Counts 1, 3, and 4 does not change this outcome because, as explained herein, Plaintiff is precluded from relitigating any of those claims in this case. Accordingly, he has not demonstrated a "substantial risk" of any event that would trigger Tennessee's statutory default to electrocution for his execution.

## D.    COUNT 3 — LETHAL INJECTION PROTOCOL VIOLATES 8TH AMENDMENT

Plaintiff alleges that the current three-drug protocol violates the Eighth Amendment and offers multiple alternative methods of execution that he says "substantially reduce the constitutionally-unacceptable risk of inflicting unnecessary and serious pain" created by the protocol. (Doc. No. 11 at 73–136.) He claims that the protocol is unconstitutional both on its face and as applied to him because of the potential complications caused or exacerbated by his individual characteristics, including mental health problems, Chronic Obstructive Pulmonary Disease (COPD), poorly controlled hypertension, gastro-esophageal reflux disease, valvular heart disease, enlarged prostate, cataracts, and high cholesterol, chronic concussive brain injury, obesity,

reported difficulty lying flat, audible heart murmur, and possible valvular heart disease that might lead to "serious and significant" lung congestion. (*Id.* at 115–16.)

Defendants argue that Plaintiff's facial challenge to the protocol in Count 3 is barred by res judicata because it is the same Eighth Amendment claim that was adjudicated in state court. (Doc. No. 13 at 15–17.) They argue that Plaintiff's as-applied challenge in Count 3 is likewise barred because Plaintiff *could have* raised it in his state court case. [6] (*Id.* at 17.)

Plaintiff responds that res judicata does not apply to Count 3 because it relies on new facts that could not have been presented in the state-court case. (Doc. No. 17 at 21–25, 42.) He relies primarily on *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), as revised (June 27, 2016), in which the Supreme Court held that adjudication of abortion providers' previous lawsuit before a statute's enforcement did not preclude a second lawsuit after enforcement. The Court reached that decision on the basis that "new evidence presented by petitioners had given rise to a new claim." *Id.* at 2306. It concluded that the petitioners' new claim "rests in significant part upon later, concrete factual developments" and that "[t]hose developments matter." *Id.* And it provided an instructive hypothetical applying its reasoning to the context of a prisoners' conditions-of-confinement claim:

> Imagine a group of prisoners who claim that they are being forced to drink contaminated water. These prisoners file suit against the facility where they are

---

[6] The Court observes that, shortly before trial in state court, three other plaintiffs (not including Plaintiff) moved for leave to file a supplemental complaint asserting as-applied challenges to the protocol on the basis of individual characteristics including diabetes, high cholesterol, depression, and other psychological issues. Motion for Leave at 16–23, *Abdur'Rahman v. Parker*, No. 18-183-II(III) (filed June 28, 2018). The trial court denied leave on the basis of "undue delay" and specifically observed that the plaintiffs had expressly disavowed any as-applied challenges in response to the court's question early in the pendency of the case. Memorandum and Order Granting in Part and Denying in Part Plaintiffs' Motion to Amend at 5–6, 10, *id.* (Davidson Chancery Court June 29, 2018). This history supports the presumption that Plaintiff could have litigated his as-applied claims in state court if he had included them in the original state-court complaint or a timely motion to amend.

incarcerated. If at first their suit is dismissed because a court does not believe that the harm would be severe enough to be unconstitutional, it would make no sense to prevent the same prisoners from bringing a later suit if time and experience eventually showed that prisoners were dying from contaminated water. Such circumstances would give rise to a new claim that the prisoners' treatment violates the Constitution. Factual developments may show that constitutional harm, which seemed too remote or speculative to afford relief at the time of an earlier suit, was in fact indisputable. In our view, such changed circumstances will give rise to a new constitutional claim.

*Id.* at 2305.

Plaintiff asserts that the new material evidence supporting Count 3 is "including, but not limited to" certain facts about Billy Irick's execution, which the Court has already discussed above. (Doc. No. 17 at 22.)  As the Court explained, none of those facts constitute the type of materially significant, concrete factual developments necessary to give rise to a new claim.

The Court is not obligated to speculate about what other unspecified facts Plaintiff relies on in connection with this dispute or to craft his response for him. *See Thompson v. A.J. Rose Mfg. Co.*, No. 99-3728, 2000 WL 302998 (6th Cir. Mar. 14, 2000) (explaining that it would be improper for the court to function as "an advocate seeking out the strongest arguments and most successful strategies for a party"); *Kirkland v. Cty. Comm'n of Elmore Cty., Alabama*, No. 2:08CV86-MEF, 2009 WL 596538, at *2 (M.D. Ala. Mar. 6, 2009) ("[A] party's decision not to proffer argument or authority in response to a dispositive motion is at his peril.").  But even if the Court were so inclined, it has located only two additional pieces of information alleged in the amended complaint that might be relevant here.  The first is that Mr. Irick's hands and fingers were taped to the gurney during his lethal injection, which, Plaintiff alleges, increases the inmate's "level of panic and terror," which makes it harder for midazolam to take effect and increases the risk of more pain and suffering and "a spectacle execution." (Doc. No. 11 at 127.)  But in the context of an already-litigated protocol that calls for execution staff to "place arm supports on the gurney and restrain

the condemned inmate's arms securely to the gurney," (Doc. No. 11-4 at 42), the allegedly unexpected use of tape to restrain an inmate's hands is not material.

The second category of newly-alleged information consists of the details of Plaintiff's individual characteristics that he alleges will increase the likelihood or severity of pain and suffering during his execution. But Plaintiff's failure to allege those facts as part of his Eighth Amendment challenge in state court does not make them new facts. He does not maintain, in his amended complaint or his response to the pending motion, that any of the physical or mental conditions on which he relies were developed or discovered after the trial in state court. The doctor on whose Declaration Plaintiff relies did not personally examine him until November 2, 2018, but that examination did little more than confirm several diagnoses already indicated by the "medical records and documents" he reviewed in Plaintiff's TDOC health chart. (Doc. No. 11-48 at 1–2.) The only examination finding not included in the doctor's records summary was Plaintiff's report of difficulty lying flat (*id.* at 2), which is not a significant addition in light of his general condition. Accordingly, Plaintiff's newly alleged facts about his condition do not give rise to a cause of action that accrued only after his state-court case was adjudicated; they do not constitute material intervening "factual developments," and he could have asserted them in that case.

In his response to Defendants' notices of supplemental authority, Plaintiff raises yet another development that he contends is material to the question of whether pentobarbital is available as an alternative means of execution: a May 5, 2019, opinion from the Department of Justice's Office of Legal Counsel ("the Opinion") to the effect that the Food and Drug Administration (FDA) lacks authority to regulate the importation of lethal injection chemicals into the United States. (Doc. No. 26 at 9–16.) Because the Tennessee Supreme Court ruled against Plaintiff and his fellow inmates in state court on the basis that they had failed to prove that

pentobarbital was available to the TDOC, *Abdur'Rahman v. Parker*, 558 S.W.3d 606, 610, 625 (Tenn. 2018), Plaintiff argues that the Opinion materially alters the facts of the case and that now "[t]here are no obstacles to Tennessee obtaining pentobarbital from overseas." (Doc. No. 26 at 16.) Plaintiff overstates the significance of the Opinion.

As Defendants correctly point out, OLC opinions are advisory and do not have the effect of law. *Campaign for Accountability v. U.S. Dep't of Justice*, 278 F. Supp. 3d 303, 321 (D.D.C. 2017). Moreover, this Opinion directly conflicts with the 2013 holding by the United States Court of Appeals for the District of Columbia that the FDA's failure to regulate the importation of a foreign lethal injection chemical violated the Food, Drug, and Cosmetic Act. *Cook v. Food & Drug Admin.*, 733 F.3d 1, 11, 12 (D.C. Cir. 2013). Plaintiff does not point to any steps taken by the Department of Justice to lift the injunction imposed in that case, and of course the Opinion itself cannot serve that purpose or have that effect. It is almost certain, therefore, that any move by the FDA to stop regulating in this area will be met with litigation. Moreover, the Court takes judicial notice of the fact that the Congressional House Committee on Oversight and Reform has already begun an inquiry into the basis for and circumstances surrounding the Opinion. *See* https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2019-08-14.%20Raskin%20and%20Pressley%20to%20DoJ-Barr%20re.%20Death%20Penalty.pdf. (last accessed Sept. 6, 2019).

Accordingly, there is no basis to find that the Opinion has had or will have any practical effect on—i.e., somehow increase— Tennessee's ability to import pentobarbital in the near future. And, even assuming that Tennessee suddenly had the legal ability to import pentobarbital, the fact (adduced in the state-court litigation) that there are supplies of pentobarbital in other countries does not establish that there are suppliers willing to sell the chemical to Tennessee for use in

executions. As the Supreme Court observed in *Glossip*, pentobarbital originally came into short supply for executions because "[a]nti-death-penalty advocates lobbied the Danish manufacturer of the drug to stop selling it" for that purpose, and the manufacturer "took steps to block the shipment of pentobarbital for use in executions in the United States." *Glossip v. Gross*, 135 S. Ct. 2726, 2733 (2015). FDA regulation is not, therefore, the only obstacle to obtaining pentobarbital from foreign nations. For all these reasons, the Opinion does not materially alter the circumstances of this case.

Tennessee's doctrine of res judicata precludes this claim in its entirety.

E.    <u>COUNT 4 — DUE PROCESS VIOLATION</u>

Plaintiff alleges that the trial judge who sentenced him specifically sentenced him to "death by electrocution." (Doc. No. 11 at 134.) He claims that the current three-drug lethal injection protocol "constitutes an increase in the punishment imposed" in that sentence and "is, therefore, a violation of the Due Process Clause." (*Id.*)

This claim is effectively a re-packaged version of Plaintiff's ex post facto claim in Count 1, and Defendants accordingly raise the same defenses to it, including that it is barred by res judicata. (Doc. No. 13 at 10, 17–18.) Indeed, one of the state-court ex post facto claims expressly relied on the fact that several of the inmates, including Plaintiff, had been "sentenced to 'death by electrocution.'" Amended Complaint at 82, *Abdur'Rahman v. Parker*, No. 18-183-II(III) (Davidson Chancery filed April 13, 2018). They argued in support of that claim that "electrocution is not severable from the sentence of death" for those plaintiffs. (*See* Doc. No. 13-3 at 33–34.)

Plaintiff responds that "[w]hile the Ex Post Facto Clause is founded in due process principles, this claim rests on the separate protection afforded by the Fourteenth Amendment; that neither a punishment, nor an additional punishment, may be inflicted without first affording due

process of law." (Doc. No. 17 at 43.)  But even if that distinction made a difference, there is no

reason that Plaintiff's current theory could not have been raised in state court.  Neither Plaintiff's

sentence nor the three-drug lethal injection protocol is a new, intervening fact.  Tennessee's

doctrine of res judicata precludes Plaintiff from splitting his various theories about how a

retroactive method of execution violates his constitutional rights into successive lawsuits.

F.      COUNT 5 — EXECUTION VIOLATES THE 8TH AMENDMENT

Plaintiff alleges that execution by any method constitutes cruel and unusual punishment

prohibited by the Eighth Amendment. (Doc. No. 11 at 135–40.)  Defendants raise three bases for

dismissal of this claim: (1) res judicata (Doc. No. 13 at 18); (2) statute of limitations (*id.* at 23);

and (3) failure on the merits. (*Id.*)

Plaintiff does not address res judicata in the specific context of this claim, relying instead

on his general opposition to res judicata's application to this case.  He does not offer any reason

this claim could not have been asserted along with his Eighth Amendment execution challenge in

state court.  Because this claim concerns the same transaction—Plaintiff's execution—that was the

basis for his state-court case and could have been raised in that case, it is barred by res judicata.

Defendant also is correct that "it is settled that capital punishment is constitutional." (Doc.

No. 13 at 23 (quoting *Glossip v. Gross*, 135 S. Ct. 2726, 2732 (2015).)  Plaintiff responds, relying

on *Trop v. Dulles*, 356 U.S. 86 (1958), that Supreme Court cases upholding the constitutionality

of various methods of execution do not foreclose his claim because "[t]he infliction of any

punishment resulting in death violates evolving standards [of decency] that define the Eighth

Amendment." (Doc. No. 17 at 46.)  But just this year the Supreme Court unequivocally stated that

"[t]he Constitution allows capital punishment." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1122 (2019).

The Court cautioned that "[u]nder our Constitution, the question of capital punishment belongs to

the people and their representatives, not the courts, to resolve," and that "the judiciary bears no license to end a debate reserved for the people and their representatives." *Id.* at 1123, 1135. Accordingly, Plaintiff's claim to the contrary fails as a matter of law.

In light of these findings, it is unnecessary for the Court to address the parties' dispute about the application of the statute of limitations to Plaintiff's claim.

G.     COUNT 6 — UNCONSTITUTIONAL COERCION

Plaintiff alleges that the current three-drug lethal injection protocol unconstitutionally coerces him—by its lengthier infliction of severe pain as compared to electrocution—to waive his right to challenge the constitutionality of electrocution by affirmatively choosing electrocution as the method of his execution. (Doc. No. 11 at 140–42.)  He claims that this coerced waiver violates his right to due process under the Fourteenth Amendment. (*Id.* at 142.)

Some legal background is necessary to understand this claim.  In 1999, an Arizona inmate had a similar choice between two methods of execution and elected to be executed with lethal gas—a method that had already been found to be unconstitutional by the Ninth Circuit.  When he later filed suit to challenge the constitutionality of execution by lethal gas, the Supreme Court held that "[b]y declaring his method of execution, picking lethal gas over the State's default form of execution—lethal injection—Walter LaGrand has waived any objection he might have to it." *Stewart v. LaGrand*, 526 U.S. 115, 119 (1999).  Thus, the (allegedly coerced) waiver on which Plaintiff's claim is based is not found in Tennessee's execution statute or its lethal injection protocol, but is purely a function of the law as announced by the Supreme Court.

Defendants assert that this claim is barred by res judicata and fails to state a claim upon which relief can be granted. (Doc. No. 13 at 18, 24.)  Plaintiff, again, does not address the res judicata issue in the specific context of this claim.  The state-court plaintiffs asserted this same

theory in support of their ex post facto claim, citing *Stewart v. LaGrand* and arguing that the three-drug protocol forced them into "an impossible Catch-22" in which "if Plaintiffs elect electrocution—the method of execution for which they were sentenced—the law imposes a waiver of any challenge to that method despite the fact that electrocution will cause Plaintiffs to be burned alive from the inside." (Doc. No. 13-3 at 34.)  Although the state-court plaintiffs did not use the word "coercion" to describe the choice they faced, they alleged that the three-drug protocol increased their punishment by burdening them with the waiver. (*Id.*)  Because Plaintiff's current claim either was or could have been asserted in the state-court case, he is precluded by Tennessee's doctrine of res judicata from litigating it in this case.

Alternatively, the Court finds that *Stewart v. LaGrand* itself forecloses the claim.  Plaintiff attempts to distinguish his case by asserting that LaGrand chose a method of execution that was "then-thought to be harsher" than the alternative (Doc. No. 17 at 48 n.21), but the Supreme Court found the waiver arose from the choice itself, not the relative merits of the method chosen. *Stewart*, 526 U.S. at 119 ("By declaring his method of execution, picking lethal gas over the State's default form of execution—lethal injection—Walter LaGrand has waived any objection he might have to it.").  As this Court previously explained with regard to this same claim:

> Plaintiffs do not allege anything that differentiates their circumstances from LaGrand's. They allege that Tennessee's current lethal injection protocol is worse than electrocution, but surely LaGrand and any other inmate who elects a secondary method of execution does so because he believes the other option worse. They lament the consequent loss of the right to challenge the constitutionality of electrocution, but that loss is not as great as LaGrand's lost opportunity to challenge a method of execution that had already been found unconstitutional. In materially indistinguishable circumstances, this Court is not in a position to hold that a waiver imposed by Supreme Court precedent is unconstitutional.

Memorandum and Order at 9, *Miller v. Parker*, No. 3:18-1234 (M.D. Tenn. Nov. 15, 2018) (Campbell, J.).  On appeal, the United States Court of Appeals for the Sixth Circuit rejected the

claim that Defendants "improperly compelled [Appellant] to choose between two unconstitutional methods of execution" because "this court has concluded that neither of these methods violates the Constitution." *Miller v. Parker*, 910 F.3d 259, 261 (6th Cir.), *cert. denied*, 139 S. Ct. 399 (2018).

Plaintiff's claim invokes the doctrine of unconstitutional conditions, which the Sixth Circuit has recently explained at some length:

> The United States Constitution does not contain an Unconstitutional Conditions Clause. What it does contain is a series of individual rights guarantees, most prominently those in the first eight provisions of the Bill of Rights and those in the Fourteenth Amendment. . . . What makes a condition unconstitutional turns . . . on a pre-existing obligation not to violate constitutional rights. The government may not deny an individual a benefit, even one an individual has no entitlement to, on a basis that infringes his constitutional rights. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). . . . In the words of the Supreme Court, the principle "forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013).
> . . .
> [T]he State may not condition a benefit by requiring the recipients to sacrifice their constitutional rights. *Regan v. Taxation With Representation of Wash.*, 461 U.S. 540, 545 (1983). Just as the State may not directly order someone to stop exercising his rights, it may not coerce him into "giving them up" by denying the benefits if he exercises those rights. *Koontz*, 570 U.S. at 604, 612.

*Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 911–12 (6th Cir. 2019). Viewed in that context, Plaintiff's claim is that Defendants are conditioning the *benefit* of electrocution on the *waiver* of his right to assert the unconstitutionality of electrocution in court. That claim fails on its merits for several reasons.

First, as discussed above, the Defendants do not extract any waiver of a legal challenge to electrocution from Plaintiff as a condition of choosing electrocution. No such waiver is required by Tennessee's statute, TDOC's protocol, or the election form itself; as discussed above, waiver of the result of United States Supreme Court case law. The only waiver expressly included in the

election form is the waiver of the right to be executed by lethal injection. (Doc. No. 11-4 at 87.) Accordingly, Defendants are not imposing any unconstitutional condition on Plaintiff.

But more importantly, as the Supreme Court's decision in *Stewart v. LaGrand* suggests, it is simply untenable for Plaintiff to argue simultaneously that he has (a) a right to be electrocuted and (b) a right not to be electrocuted (or at least a right to challenge his electrocution). Even assuming arguendo that each of those rights would state a claim individually under existing law, and that neither was barred by res judicata or unripe, they cannot be asserted simultaneously. Plaintiff alleges that "[t]he jury and judge expressly sentenced Plaintiff Sutton to death by electrocution, therefore, he must be executed by electrocution. . . . Absent such provisions in the protocol Plaintiff Sutton would be punished in accordance with the punishment imposed at the time of sentencing (electrocution), and, Plaintiff Sutton would have a right to be heard on the constitutionality of that punishment." (Doc. No. 11 at 141–42.) Plaintiff's claim ignores the fact that constitutional rights can be mutually exclusive. For example, a criminal defendant has the right under the Fifth Amendment to remain silent and not "be a witness against himself." *Miranda v. Arizona*, 384 U.S. 436, 442 (1966) (quoting U.S. Const. amend. V). Conversely, "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). But that does not mean that a defendant could effectively bring a halt to his prosecution by claiming that the state conditions the benefit of testifying on waiving the right to remain silent. Instead, the combined effect of both rights enables "a criminal defendant to ***choose*** between silence and testifying in his own behalf." *Ferguson v. State of Ga.*, 365 U.S. 570, 602 (1961) (Clark, J., concurring) (emphasis added). Being faced with—or, to put it more aptly, being provided with—a similar choice regarding his method of execution does not coerce Plaintiff to do anything or otherwise violate his constitutional rights.

36

And finally, the linchpin of Plaintiff's claim is that Defendants are "threatening to unlawfully subject him" to the three-drug lethal injection protocol (Doc. No. 11 at 142), and that he may be wrongfully coerced into choosing electrocution by that "credible threat of legally unjustified violence." (Doc. No. 17 at 49.) But, even aside from the Tennessee court's decision in *Abdur'Rahman* and any preclusive effect it has on this assertion, the Sixth Circuit has repeatedly rejected this argument in two related cases:

> In Count Six, West contends that the state is violating his rights by compelling him to choose one form of execution over another. However, we also rejected this argument in *Miller*. *Id.* at 261–62. Because we have "concluded that neither of these methods [of execution] violate[ ] the Constitution," West's coercion argument must fail. *Ibid.*

*West v. Parker*, No. 19-5585, 2019 WL 3564476, at *8 (6th Cir. Aug. 6, 2019), *cert. denied*, No. 19-5561, 2019 WL 3821757 (U.S. Aug. 15, 2019).

　For all of these reasons, Count 6 must be dismissed.

H.　　COUNT 7 — ACCESS TO COURTS AND RIGHT TO COUNSEL

Plaintiff claims that his First Amendment right to access the courts guarantees him two attorney-witnesses to his execution, and the each of them must have immediate access to a telephone and to each other. (Doc. No. 11 at 143–46.) Defendants offers four bases for dismissing this claim: (1) non-justiciability; (2) res judicata; (3) statute of limitations; and (4) failure on the merits. (Doc. No. 13 at 10–11, 18–19, 24–25.)

First, Defendants assert that there is no case or controversy for the Court to adjudicate with respect to the telephone-access portion of this claim because they have agreed to provide Plaintiff's attorney-witness with access to a telephone throughout his execution. (Doc. No. 13 at 10–11.) Plaintiff responds that his claim is viable because "this concession can be reversed at Defendants' whim," (Doc. No. 17 at 50), but he offers no basis to anticipate such a reversal. Plaintiff concedes

that Defendants provided counsel at recent executions with access to a telephone. (Doc. No. 1 at 146.) There is no statute or regulation preventing an attorney-witness's access to a prison telephone, *see* Memorandum and Order at 8, *Zagorski v. Haslam*, No. 3:18-cv-1205 (M.D. Tenn. Oct. 29, 2018) (Trauger, J.), and Defendants "affirmatively represent to the Court," subject to the requirements of Rule 11(b) of the Federal Rules of Civil Procedure, that "they will provide" such access to Plaintiff's attorney-witness. (Doc. No. 13 at 11.) The Court, therefore, agrees with Defendants that there is no ripe controversy with regard to telephone access subject to judicial review. Accordingly, to the extent it relates to the request for telephone access, this count must be dismissed without prejudice based on the lack of ripeness. *E.g., Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 292 (5th Cir. 2006) (dismissing claims "without prejudice for lack of subject matter jurisdiction as being unripe"); *Clevenger v. Dillards, Inc.*, 412 F. Supp. 2d 832, 847 (S.D. Ohio 2006) (dismissing claims without prejudice due to lack of ripeness).

In light of the telephone access Defendants will provide to Plaintiff's attorney-witness, there does not appear to be any factual or constitutional basis for his demand for two such witnesses. Plaintiff affirmatively acknowledges that the telephone provided during previous executions is "on a wall inside the room where counsel viewed the execution," (Doc. No. 11 at 146), and he does not clearly allege any impediment to an attorney's simultaneously observing the execution while using the telephone. Plaintiff's allegations that he "requires the assistance of two defense attorneys during the execution" and that "[t]o provide adequate access to courts, two defense attorney witnesses must be present to view the execution" (Doc. No. 11 at 141–42) are wholly conclusory and fail to state a claim upon which relief may be granted. *See Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) ("We need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as

factual allegations will not suffice. The complaint's factual allegations must be enough to raise a right to relief above the speculative level,' and 'state a claim to relief that is plausible on its face.") (citations and internal quotation marks omitted). Accordingly, to the extent it relates to the request for two attorney-witnesses, this count must be dismissed with prejudice

Because Count 7 must be dismissed on these grounds, the Court finds it unnecessary to resolve the parties' dispute about the application of res judicata or the statute of limitations.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss will be granted, and this action will be dismissed.

An appropriate Order will be entered.


_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE